UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO 09-80607-CIV-MARRA/JOHNSON

L.H. EQUITY INVESTMENTS LLC,

      Plaintiff,

v.

DWYANE WADE, et al.,

      Defendants.

_____/

## ORDER

THIS CAUSE is before the Court upon Defendants, Dwyane Wade, Marcus Andrews,

Henry Thomas, Wade Global LLC ("Wade Global"), CSMG Sports Ltd., and John Does 1-10's

(collectively, "Defendants") Motion to Dismiss (DE 25).  The Court has reviewed the motion,

response (DE 28) and reply (DE 32) and is otherwise fully advised in the premises.  The Court

held a hearing on the motion on January 14, 2010.

## Background

This in an action for damages and injunctive relief for alleged violations of the federal

antitrust laws, brought under 15 U.S.C. §§ 15 and 26.  The Complaint (DE 1) alleges three

counts, entitled Count I - Illegal Conspiracy in Violation of Section 1 of the Sherman Act, 15

U.S.C. § 1; Count II - Illegal Monopolization and Attempted Monopolization in Violation of

Section 2 of the Sherman Act, 15 U.S.C. § 2; and Count III - Illegal Conspiracy to Monopolize in

Violation of Section 2 of the Sherman Act, 15 U.S. C. § 2.  Defendants seek dismissal of all

counts.

According to the allegations in the Complaint, this action arises from a failed joint venture restaurant chain called "D. Wade's Place," ("DWP").  The restaurant chain was to sell personalized sports memorabilia featuring Defendant Dwyane Wade. Comp. ¶ 3.  Wade is a star basketball player for the National Basketball Association ("NBA") team the Miami Heat, which plays its home games at the American Airlines Arena located in Miami-Dade County, Florida. Comp. ¶ 14.  Wade and Defendant Marcus Andrews formed Wade Global for the purposes of managing the use of Wade's name, likeness, and endorsements. Comp. ¶ 17.  Defendant Henry Thomas is President of Defendant CSMG Sports, Ltd., a sports management and marketing firm, and is a "partner-agent" for Wade. Comp. ¶¶ 16, 18.

On or about August 6, 2007, Wade and Andrews entered into a joint venture agreement with Richard von Houtman and Mark Rodberg.  The joint venture was to develop and operate an upscale restaurant concept to be named "D. Wade's Place" featuring unique sports memorabilia sold at discount prices. Comp. ¶ 19.  Plaintiff L.H. Equity is the successor in interest to 88% of the voting stock in D. Wade's Place LLC that was originally granted to von Houtman and Rodberg. Comp. ¶ 13, 24.  L.H. Equity is owned and managed exclusively by Lauren Hollander. Comp. ¶ 13.

As part of the joint venture agreement, Wade granted D. Wade's Place LLC a license to use his name, image, and likeness to create the restaurant's concept. Comp. ¶ 19.   Wade also granted D.Wade's Place the right to use his name, fame, nickname, initials, autograph, voice, video or film portrayals, facsimile or original signature, photograph, likeness, and image or facsimile image without Wade's consent to create personalized memorabilia featuring Wade which could be sold at the restaurants. Comp. ¶ 19.

2

In early 2009, Defendants conspired to "boycott" D. Wade's Place LLC and ceased to cooperate with L.H. Equity, Rodberg, von Houtman, or Hollander. Comp. ¶ 43.  Since April 26, 2008, (a) Wade has not performed any of his promotional obligations under the joint venture agreement, including his obligations related to personal appearances, creating advertising and other materials for use in the media; and (b) Andrews has refused to make any effort to secure Wade's performance of these obligations unless Andrews received substantially increased payments from DWP.  Comp. ¶ 44.

As a result of the Defendants' conspiracy and boycott of the D. Wade Place business, the two existing restaurants were deprived of the Wade-centered publicity necessary to support the intended business model.  Comp. ¶ 56.  As a consequence, the restaurants were shut down in 2008. Comp. ¶ 56.  Plaintiff alleges that Defendants' actions constitute a conspiracy and boycott in violation of Section 1 of the Sherman Act.  Comp. ¶¶ 52-58.  Plaintiff also asserts that Defendants' actions constitute illegal monopolization and attempted monopolization of the markets for Wade Memorabilia in southern Florida and other metropolitan areas where NBA basketball teams play their home games, in violation of Section 2 of the Sherman Act.  Comp. ¶¶ 59-64.  Lastly, Plaintiff claims that Defendants' actions constitute a conspiracy to monopolize the markets for Wade Memorabilia in southern Florida and other metropolitan areas where NBA basketball teams play their home games, in violation of Section 2 of the Sherman Act.  Comp. ¶¶ 65-67.

**<u>Standard of Review</u>**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most

favorable to the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  To satisfy the

pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and

plain statement showing an entitlement to relief, and the statement must "give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); see also Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 545 (2007); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).

This is a liberal pleading requirement, one that does not require a plaintiff to plead with

particularity every element of a cause of action. Roe v. Aware Woman Ctr. for Choice, Inc., 253

F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or

inferential allegations respecting all the material elements necessary to sustain a recovery under

some viable legal theory." Id. (internal citation and quotation omitted).  "A complaint need not

specify in detail the precise theory giving rise to recovery.  All that is required is that the

defendant be on notice as to the claim being asserted against him and the grounds on which it

rests." Sams v. United Food and Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir.

1989).

        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level on the

assumption that all of the complaint's allegations are true." Id.  Plaintiff must plead enough facts

to state a plausible basis for the claim. Id. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950

4

(explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss").

**Allegations of a Relevant Market**

The purpose of the Sherman Act, as amended, 15 U.S.C. §§ 1-2,  is "to protect the public from the failure of the market." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459 (1993). Sections 1 and 2 employ different approaches to accomplish that goal.  Section One prohibits conspiracies, contracts, and combinations that are in restraint of trade. Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc., 376 F.3d 1065, 1069 (11th Cir. 2004).  Section Two outlaws "monopolization, attempted monopolization and conspiracy to monopolize." Id. Although different elements apply to each Section, both require that harm to competition occur within a "relevant market." Id. at 1074 ("Like claims under Section One, Section Two claims require harm to competition that must occur within a 'relevant', that is, a distinct market, with a specific set of geographical boundaries and a narrow delineation of the products at issue."). Under § 1, the question is whether there has been harm to the relevant market by an unreasonable restraint on trade. Id.  Under § 2, the issue is whether the defendant's alleged monopoly power or potential monopoly power in the relevant market would allow it to harm competition. Id.  The scope of the relevant market must therefore be determined before the Court can analyze the Sherman Act claims. See, e.g., Appleton v. Intergraph Corp., 627 F.Supp.2d 1342, 1351-52 (M.D. Ga. 2008).

The relevant market consists of both the product at issue and the geographical market for the product. Bailey v. Allgas, Inc., 284 F.3d 1237, 1246 (11th Cir. 2002).  A determination of the boundaries of the relevant product market requires an examination of all reasonable substitutes:

A relevant product market does not consist solely of the specific product over

which parties engage in a price war.  Rather, in determining a seller's monopoly
power, it is necessary to examine both the product at issue and all reasonable
substitutes available to consumers.  'The outer boundaries of a product market are
determined by the reasonable interchangeability of use or the cross-elasticity of
demand between the product itself and substitutes for it.' Brown Shoe Co. v.
United States, 370 U.S. 294, 325 (1962).

Bailey, 284 F.3d at 1246.  A relevant product market consists of "products that have reasonable

interchangeability for the purposes for which they are produced - price, use and qualities

considered." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2nd Cir. 2002), quoting United

States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 404 (1956).  An alleged product market

must bear a "rational relation to the methodology courts prescribe to define a market for antitrust

purposes - analysis of the interchangeability of use or the cross-elasticity of demand," and it must

be "plausible." Todd v. Exxon Corp. 275 F.3d 191, 200 (2nd Cir. 2001).  It is the plaintiff's

burden to properly plead the boundaries of the alleged relevant product market. Adidas America,

Inc. v. National Collegiate Athletic, 64 F.Supp.2d 1097, 1102 (D. Kan. 1999).

"Where an antitrust plaintiff fails to define its proposed relevant market with reference to

rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed

relevant market that clearly does not encompass all interchangeable substitute products even

when all factual inferences are granted in plaintiff's favor, relevant market is legally insufficient

and a motion to dismiss may be granted." JES Properties, Inc. v. USA Equestrian, Inc., 253

F.Supp.2d 1273, 1281 (M.D. Fla. 2003). See also Queen City Pizza, Inc. v. Domino's Pizza, Inc.,

124 F.3d 430, 436-37 (3rd Cir. 1997); TV Communications Network, Inc. v. Turner Network

Television, Inc., 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming district court's dismissal of

claim for failure to plead a relevant market; proposed relevant market consisting of only one

specific television channel defined too narrowly).  Cases in which dismissal on the pleadings is

appropriate frequently involve failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes. <u>Todd</u>, 275 F.3d at 200 (listing cases). <u>See, e.g.</u>, <u>Midwestern Waffles, Inc. v. Waffle House, Inc.</u>, 734 F.2d 705, 713-14 (11th Cir. 1984) (single chain of restaurants too narrow to constitute relevant product market). "An antitrust plaintiff may not define a market so as to cover only the practice complained of, this would be circular or at least result-oriented reasoning." <u>Adidas America</u>, 64 F.Supp.2d at 1102 (citations omitted).

Plaintiff alleges that the relevant product market in this case is Dwyane Wade personalized sports memorabilia. Comp. ¶¶ 31, 32.  Plaintiff contends that "[t]here is no substitute for Wade-personalized sports memorabilia ('Wade Memorabilia'), especially in southern Florida, where the Miami Heat plays.  No other professional basketball player has a comparable reputation in this market, and no star player from another professional sport or professional team can create personalized memorabilia that would be likely to divert sales revenues from Wade Memorabilia, especially in southern Florida." Comp. ¶ 32.

However, courts have "routinely rejected" the argument that allegedly unique products, by virtue of customer preference for that product, create markets unto themselves. <u>Flash Electronics, Inc. v. Universal Music & Video</u>, 312 F.Supp.2d 379, 391 (E.D.N.Y. 2004).  <u>See Hack v. President & Fellows of Yale Coll.</u>, 237 F.3d 81, 86-87 (2nd Cir. 2000) (finding that although a Yale education is undoubtedly unique, there are many colleges and universities that provide top quality education which plaintiffs could have selected); <u>Carell v. Shubert Organization, Inc.</u>, 104 F.Supp.2d 236, 265 (S.D.N.Y. 2000) (holding that the make-up designs and other intellectual property from the musical "Cats," though unique, do not constitute their

7

own market); <u>Adidas America</u>, 64 F.Supp.2d at 1097, 1103 (holding that proposed relevant

market for the sale of National Collegiate Athletic Association ("NCAA") promotional rights too

narrow and questioning "why other similar forms of advertising, namely sponsorship agreements

with teams or individuals competing in the National Football League, the National Basketball

Association, the Women's National Basketball Association, Major League Baseball, Major

League Soccer, or the Olympics, are not reasonably interchangeable with NCAA promotion

rights or sponsorship agreements").  As the court explained in <u>Global Discount Travel Services,</u>

<u>LLC v. Trans World</u>, 960 F.Supp. 701 (S.D.N.Y. 1997):

> The plaintiff's argument is analogous to a contention that a consumer is
> "locked into" Pepsi because she prefers the taste, or NBC because she prefers
> "Friends," "Seinfeld," and "E.R." A consumer might choose to purchase a certain
> product because the manufacturer has spent time and energy differentiating his or
> her creation from the panoply of products in the market, but at base, Pepsi is one
> of many sodas, and NBC is just another television network.

<u>Id.</u> at 705. <u>See also</u> <u>Theatre Party Associates, Inc. v. Shubert Organization</u>, 695 F.Supp. 150, 154-

55 (S.D.N.Y. 1988) (rejecting relevant product market that centered on a specific Broadway

show, Phantom of the Opera, because "other forms of entertainment, namely other Broadway

shows, the opera, ballet or even sporting events" would provide "adequate substitute products").

The Court rejects Plaintiff's argument that the decision in <u>Pecover v. Electronics Arts</u>

<u>Inc.</u>, 633 F.Supp.2d 976 (N.D. Cal. 2009), "supports Plaintiff's claim that Wade Memorabilia,

*simpliciter*, constitute a relevant antitrust market." (Resp. 9 n.5).  In <u>Pecover</u>, the court found a

relevant market of interactive video football software licensed by the National Football League,

American Football League, and National Collegiate Athletic Association, collectively based on

real life teams and players.  That relevant market is obviously significantly broader than the one

Plaintiff asserts here and, consequently, does not support Plaintiff's claim that a single celebrity's

memorabilia is a relevant market for antitrust purposes.   Similarly, the Court finds that the alleged "collegiate licensing market" in the United States, consisting of the "rights to use the images of athletes connected with collegiate sports," discussed in O'Bannon v. National Collegiate Athletic Ass'n, 2010 WL 445190 (N.D. Cal. 2010),  to be much broader and consequently, easily distinguishable from the market alleged in this action of one player, on one team, in one league, in one sport.

Plaintiff contends that, regardless of customer preference, one brand or product may constitute a relevant product market. (Resp. at 6-8).  However, Plaintiff's application of the Supreme Court's analysis in Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, (1992) to this situation is flawed.  In Kodak, consumers were effectively "locked-in" to buy replacement parts and services because of their purchase of a Kodak machine. Kodak, 504 U.S. at 482.  The service and parts for Kodak equipment were not interchangeable with other manufacturers' service and parts.  Thus, if one purchased a Kodak copier, the only supplier to whom the consumer could turn for replacements parts and service was Kodak.  Kodak's practices ensured further consumption of Kodak equipment and services.  The situation in Kodak is not analogous to the situation in this case, as no"lock-in" analysis is applicable.  Moreover, according to the allegations here, it is only individual "customer preference for a product, not compulsion by the product itself as in Kodak," that leads a customer to freely choose to purchase or not purchase Dwyane Wade personalized sports memorabilia, as opposed to any other celebrity merchandise.  See Global Discount Travel Services,, 960 F.Supp. at 706.  This is so even if the consumer may have previously purchased an item of Wade memorabilia.  Here, there is nothing in the allegations of Plaintiff's Complaint to indicate compulsion.  Thus, Kodak' s

narrow exception for a single brand market is inapposite.

**Conclusion**

Based upon the foregoing, the Court finds that Plaintiff has failed to allege a plausible basis for the narrow relevant product market that it asserts. Without a properly defined relevant market, the Court is unable to determine whether Defendants have restrained trade or output in violation of § 1 or to measure Defendants' ability to lessen or destroy competition in violation of § 2.  Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

(1)  Defendants' Motion to Dismiss the Complaint (DE 25) pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim based on the relevant product market issue is **GRANTED**;

(2)  Plaintiff's claim is dismissed without prejudice for failure to adequately plead a relevant product market;

(3) Plaintiff is permitted to file an amended complaint with regard to the allegations regarding a relevant product market, within twenty (20) days from the date of this Order; and it is further

**ORDERED** that Defendants' Motion to Dismiss the Complaint (DE 25) pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim, is **DENIED WITHOUT PREJUDICE** in all other respects.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of March, 2010.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:  all counsel of record