**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

Case No. 09-80607-CIV-MARRA/JOHNSON

L.H. EQUITY INVESTMENTS LLC,

Plaintiff,

vs.

DWYANE WADE, MARCUS ANDREWS,
HENRY THOMAS, WADE GLOBAL LLC,
CSMG SPORTS LTD., and JOHN DOES 1-10,

Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants Dwyane Wade ("**Wade**"), Marcus Andrews ("**Andrews**"), Wade Global LLC

("**Wade Global**"), Henry Thomas ("**Thomas**"), and CSMG Sports Ltd. ("**CSMG**") (collectively

"**Defendants**"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move this Court to dismiss

the Complaint ("**Amended Complaint**" or "**Am. Compl.**") [**D.E. # 74**] filed by Plaintiff L.H.

Equity Investments LLC ("**Plaintiff**" or "**L.H. Equity**"), and in support thereof state as follows:

**PRELIMINARY STATEMENT**

Plaintiff's second attempt to state an antitrust claim against Wade and the other

Defendants is as meritless as its first.  Indeed, Plaintiff's Amended Complaint only confirms that

Plaintiff does not have standing to assert antitrust claims against Defendants.

Plaintiff's Amended Complaint seeks to rectify the relevant market deficiencies of the

original complaint that this Court discussed in its March 29, 2010 Order dismissing Plaintiff's

original complaint (the **"Order"**).   However, mindful of the other numerous pleading

inadequacies of the original complaint, Plaintiff has attempted to remediate these shortcomings as well.  It fails on all counts.

Like its original complaint, the foundation of Plaintiff's Amended Complaint is the allegation that Wade granted D. Wade's Place LLC ("DWP") an unconditional license to use his name, likeness, and fame to create personalized memorabilia featuring Wade. This time, however, Plaintiff adds the claim that it first raised at oral argument that the license was in perpetuity.  It also abandons its previous monopolization and conspiracy to monopolize counts against Wade and the other Defendants, and now claims that Defendants conspired to terminate the supposed license that Wade granted DWP.  The changes do not affect the outcome.

Indeed, nowhere in the Amended Complaint is there a single allegation that the alleged license has ever been terminated.  Rather, accepting as we must the allegations of the Amended Complaint, the sole purpose of the alleged conspiracy was to "free Wade up" from having to spend his time promoting DWP restaurants—which, according to the Amended Complaint, DWP did not even own.  In fact, again, based on the allegations of the Amended Complaint, the only connection between the alleged conspiracy and Plaintiff's antitrust claims is that Wade's alleged failure to promote the DWP restaurants compromised the restaurants' success **as restaurants**, and thus deprived the unidentified owners of the restaurants of what Plaintiff alleges was a competitive **advantage** in the sale of memorabilia featuring Wade.

Putting aside the fact that it is DWP—and not Plaintiff—that is the alleged licensee of the right to sell Wade personalized memorabilia, and further putting aside that it is the unnamed sub-licensee/owners of the DWP restaurants—and not Plaintiff nor DWP—who allegedly were to sell the Wade personalized memorabilia, Plaintiff's Amended Complaint still cannot come close to stating a claim upon which relief can be granted.

Even if Plaintiff presented sufficient facts to allege a conspiracy among Defendants to breach Wade's purported obligation to promote the restaurants—which it has not—and even if DWP actually had a license to sell Wade-personalized memorabilia—which it did not—the so-called conspiracy cannot form the basis of an antitrust violation because it had no effect on DWP's alleged right to compete in the market for the sale of Wade memorabilia.

In addition to these fundamental failings, Plaintiff's Amended Complaint should be dismissed for a number of additional reasons.

*First*, Plaintiff's "newly" defined market of "NBA stars in South Florida," as opposed to "Dwyane Wade" in the original complaint, is another failed attempt to improperly limit the product market to a single celebrity.  And, even if Plaintiff's Amended Complaint could be read to encompass a broader market, Plaintiff has not pled facts to establish that Wade has the requisite market power necessary to implicate the antitrust laws.

*Second*, Plaintiff's Amended Compliant still falls far short of the pleading requirements of *Twombly* and *Iqbal*.

*Third*, Wade, as the owner of his name, likeness and fame has the unqualified right to decide who may or may not sell his personalized memorabilia.

*Fourth***, Plaintiff has not alleged that Defendants participated in an unlawful horizontal conspiracy under either the *per se* rule or rule of reason.

*Fifth*, Defendants, as alleged by Plaintiffs, have a single economic interest and, as a matter of law, cannot conspire in violation of Section 1 of the Sherman Act.

Plaintiff's allegations are—as they have always been—nothing more than a recasting of DWP's claims from the related state court breach of contract case.  However, Defendants'

alleged conduct in this case simply does not implicate the federal antitrust laws.  Plaintiff's Amended Complaint, therefore, should be dismissed in its entirety with prejudice.

**PLAINTIFF'S ALLEGATIONS**

Like the original complaint, the Amended Complaint is strikingly short on details concerning purported facts and legal bases for any violation of the federal antitrust laws.

At this stage of the case, the Court is well-acquainted with Plaintiff's allegations concerning Wade, including his accomplishments on the basketball court and standing in the community, so they need not be repeated here.

Plaintiff again alleges that Wade and Andrews entered into a joint venture agreement in August of 2007 with Richard von Houtman ("**von Houtman**") and Mark Rodberg ("**Rodberg**") (the "**JVA**") for the purpose of establishing a restaurant concept "featuring Wade Memorabilia to be sold at discount prices" and operating under the name "D.Wade's Place" (the "**Restaurants**"). (Am. Compl. ¶ 17.)  The Amended Complaint alleges further that the restaurant concept would be "carr[ied] out" by DWP.  (*Id.*)

In order to achieve the supposed purpose of the alleged joint venture, the Amended Complaint alleges that Wade granted DWP a license "in perpetuity" to sell sports memorabilia personalized by Wade.  (*Id.*)  Indeed, the Amended Complaint purports to actually quote from the JVA the supposed language granting DWP "the right to 'use Wade's name, fame, nickname, initials autograph, voice, video or film portrayals, facsimile or original signature, photograph, likeness and image or facsimile image without Wade's consent' to create personalized memorabilia featuring Wade which could be sold at DWP Restaurants."  (*Id.*)

According to Plaintiff, the initial stockholders of DWP were von Houtman and Rodberg (who together allegedly held 88% of the stock), Wade (who was given 10% of the stock), and

Andrews (who held 2% of the stock).  (*Id.* at ¶ 21.)  Plaintiff is alleged to be the transferee of von Houtmans' and Rodbergs' shareholder interests in DWP, and thus, now the **88% owner of voting stock in DWP.**  (*Id.* at ¶ 23, 24.)  Wade Global, Thomas, and CSMG were not involved in the negotiation of the JVA and did not stand to receive any equity or royalties from the business.  (*Id.* at ¶ 22.)

The Amended Complaint alleges that the JVA obligated Wade to personally appear at each D. Wade's Place restaurant four times a year (*Id.* at ¶ 26), and that DWP planned on franchising 40 D. Wade's Place restaurants "to be located in major metropolitan areas where nine NBA teams play their home games."  (*Id.* at ¶36.)

Significantly, the Amended Complaint does not allege that DWP ever opened a D. Wade's Place restaurant.  Rather, it alleges that the two D. Wade's Place restaurants were opened by an unnamed third party licensee "that made the investments in the restaurant conversions and acted as the day to day manager."  (*Id.* at ¶ 37.)  Moreover, while Plaintiff claims that its business plan was to "act as a wholesaler . . . [and] sell the resulting Wade Memorabilia to franchisees after marking it up 100%," Plaintiff does not allege that it ever sold a single item of Wade Memorabilia.  To the contrary, it only alleges that Wade Memorabilia was sold by the unnamed third party licensee that owned the two D. Wade's Place restaurants.  Further, there are no allegations that DWP had any control over what the licensee or the contemplated future franchisees could charge for Wade Memorabilia..  (*See id.* at ¶ 44.)

The Amended Complaint alleges that in early 2008, Wade conspired with Andrews, Wade Global, CSMG and Thomas to "boycott" DWP.  According to Plaintiff, CSMG, Thomas, Wade Global and Andrews entered into the conspiracy "because of the enormous time-consuming obligations imposed on Wade by the JVA, including four personal appearances at

each D. Wade's Place restaurant annually," which interfered with their ability to market Wade elsewhere for more money.  (*Id*. at ¶ 46, 58, 59.)

By contrast, Plaintiff does not allege that the elimination of DWP as a competitor in the sale of Wade Memorabilia was an object of the conspiracy.  In fact, nowhere in the Amended Complaint is there any allegation that any of the non-Wade Defendants had any interest in the sale of Wade Memorabilia, or that Wade ever terminated the license he allegedly gave DWP to sell Wade Memorabilia.  Instead, the only action that any of Defendants are alleged to have taken to succeed in their conspiracy to "boycott" DWP is Wade's alleged failure to promote the two D. Wade's Place restaurants that were owned by the unnamed third party licensee.  (*Id*. at ¶ 47.)  As far, as the other Defendants are concerned, there is no allegation that any of them did anything, other than supposedly to talk to Wade.

Yet, based on these allegations, Plaintiff asserts that it has a claim against Wade and the other Defendants for violation of Section 1 of the Sherman Act.

## ARGUMENT

## I.  PLAINTIFF LACKS STANDING TO BRING THE CLAIMS ASSERTED IN THE AMENDED COMPLAINT

To establish antitrust standing, a plaintiff must show:  (1) that it suffered antitrust injury; and (2) that it is a proper antitrust plaintiff, *i.e.* an efficient enforcer of the antitrust laws. *Todorov v. DCH Healthcare* Authority, Inc., 921 F.2d 1438, 1449 (11th Cir. 1991).  Plaintiff cannot meet either of these requirements.

The gravamen of the Amended Complaint is that Defendants conspired to eliminate DWP as a competitor in the sale of Wade personalized Memorabilia.  Plaintiff, however, is not DWP. It is merely a shareholder in DWP along with Wade and Andrews.  And, as the Eleventh Circuit

has repeatedly made clear, a shareholder of a company alleged to have been injured by a violation of the antitrust laws does not have standing to assert an antitrust claim on its own behalf.

In *Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984), an individual who was a shareholder and the general manager of Waffles, Inc. brought an antitrust action against Waffle House alleging illegal tying arrangements.  The court concluded that the individual defendant did not have standing to bring the action "in his capacity as an officer, employee or stockholder" of Waffles, Inc.  *Id.* at 710.  The court reasoned that "the personal damages which [the individual plaintiff] seeks to recover are, at best, incidental to activity forbidden by the antitrust law and not the type of injury the antitrust laws were intended to prevent."  *Id.* at 711.

Similarly, in *Palazzo v. Gulf Oil Corporation*, 764 F.2d 1381 (11th Cir. 1985), the two stockholders of Advanced Sales Corp., a retail gas corporation, brought claims against Gulf Oil for anticompetitive activity that impacted Advanced's business.  *Id.* at 1382.  As in *Waffles, Inc.* the Eleventh Circuit found the shareholders' injury too remote to be actionable under the antitrust laws.  As the court stated, "the individual claims of Frank and Tina are clearly the type which this and other courts have consistently rejected in antitrust actions.  Claims for loss of income and loss of profits resulting from injury to a business are simply too remote to be cognizable claims under the antitrust laws.  *Id.* at 1387-88.  The court explained that "[t]his prudential limitation on standing is intended to forestall the multitude of claims for incidental or consequential injuries which theoretically could be traced to the 'ripple effect' of anti-competitive activity."  *Id.* at 1387.

Finally, in *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Company*, 748 F.2d 602 (11th Cir. 1985), an officer and shareholder of an independent movie distributor brought suit against eight major motion picture distributors alleging that they

conspired to keep the distributor out of the market.  Here as well, the Eleventh Circuit ruled that the individual did not have standing to assert his company's antitrust claim.

> Patterson claimed individual injury in his capacity as an officer and shareholder of SAFFCO, the target of the alleged conspiracy. The law on standing in this situation is clear. Neither an officer nor an employee of a corporation has standing to bring an action in his own right for an antitrust violation causing injury to the corporation and its business.  Such persons may suffer "indirect" or "secondary" financial injury from antitrust violations, but they are not the target of the anticompetitive practices.  Patterson plainly lacked standing to sue the defendants in this case.

*Id.* at 608-09 (internal citations omitted).

Plaintiff's lack of standing in this case is just as apparent as the plaintiffs in the trilogy of cases considered by the Eleventh Circuit.  Again, by Plaintiff's own allegations, Plaintiff was not the alleged recipient of Wade's license to sell Wade Memorabilia; DWP was.  Thus, like each of the Eleventh Circuit cases, Plaintiff's claim derives solely from the fact that it is an alleged shareholder of DWP.

Plaintiff, therefore, is not a proper antitrust plaintiff and the Amended Complaint should be dismissed in its entirety with prejudice for this reason alone.

## II.   PLAINTIFF DOES NOT ALLEGE A VALID RELEVANT MARKET OR SUFFICIENT MARKET POWER TO SUPPORT ITS CLAIMS

This Court rejected Plaintiff's original theory that limited the relevant market in this case only to Wade Memorabilia.  Plaintiff's newly designed relevant markets fare no better.

The Amended Complaint appears to offer two alternative relevant markets: (1) sports memorabilia personalized by NBA stars who play in south Florida; and (2) with regard to Count III, sports memorabilia personalized by NBA players in the United States.  Each of these definitions is insufficient to plead a proper relevant market for antitrust purposes.

A properly defined relevant market is a predicate for a Section 1 claim, and a plaintiff bears the burden of properly pleading the boundaries of the alleged relevant market or markets. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 435 (3d Cir. 1997); *Adidas America, Inc. v. National Collegiate Athletic Ass'n*, 64 F. Supp. 2d 1097, 1102 (D. Kan. 1999).

In its Order, this Court noted that "[t]he relevant market consists of both the product at issue and the geographical market for the product."  Order at 5 (citing *Bailey v. Allgas*, 284 F.3d 127, 1246 (11th Cir. 2002)).  In *Bailey*, the Eleventh Circuit reinforced the principle that "[a] determination of the boundaries of the relevant product market requires an examination of reasonable substitutes."  *Id.* at 5 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)).  The Eleventh Circuit continued that "'[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.'"  *Bailey*, 284 F.3d at 1246.

The alleged relevant market "must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes-analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible."  *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (internal citations and quotations omitted); *see also PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (a relevant market consists of "products that have reasonable interchangeability for the purposes for which they are produced – price, use and qualities considered").

When an antitrust plaintiff does not define its proposed relevant market in accord with these dictates, a "relevant market is legally insufficient and a motion to dismiss may be granted."  Order at 6 (citing *JES Properties, Inc. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1281 (M.D. Fla. 2003); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir.

1997); *TV Comm'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992)).

As this Court recognized, "courts have 'routinely rejected' the argument that allegedly unique products, by virtue of customer preference for that product, create markets unto themselves." Order at 7-8 (citing *Flash Electronics, Inc. v. Universal Music & Video*, 312 F. Supp. 2d 379, 391 (E.D.N.Y. 2004); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86-87 (2nd Cir. 2000); *Carell v. Shubert Organization, Inc.*, 104 F. Supp. 2d 236, 265 (S.D.N.Y. 2000); *Adidas America*, 64 F. Supp. 2d at 1103).

As the Court also recognized, "'[a]n antitrust plaintiff may not define a market so as to cover only the practice complained of, this would be circular or at least result-oriented reasoning.'" Order at 7 (citing *Adidas America*, 64 F. Supp. 2d at 1102 (citations omitted)).

That, however, is exactly what Plaintiff has attempted with its new definition of the relevant market as consisting of memorabilia personalized by NBA stars that play in South Florida. Plaintiff might as well have defined the relevant market as "NBA players that wear number 3 for the Miami Heat" or "the NBA's leading scorer for teams that play in South Florida." The analysis and result is the same here as it was with the original complaint. Regardless of how Plaintiff tries to re-name it, a relevant market restricted solely to Wade-personalized sports memorabilia cannot be legally countenanced.

Plaintiff's alternative market definition of personalized NBA memorabilia in the United States is also too narrow and impermissibly designed "so as only to cover the practice complained of." Plaintiff attempts to defend this market restriction by alleging that "a significant number of purchasers are only interested in basketball as a sport." (Am. Compl. ¶ 33.) As the Court observed in its Order, however, attempts to arbitrarily limit the relevant market based on

similar consumer preference assertions have been consistently rejected. *See e.g. Adidas America*, 64 F. Supp. 2d at 1103-04 (holding that proposed relevant market for the sale of National Collegiate Athletic Association ("NCAA") promotional rights too narrow and questioning "why other similar forms of advertising, namely sponsorship agreements with teams or individuals competing in the National Football League, the National Basketball Association, the Women's National Basketball Association, Major League Baseball, Major League Soccer, or the Olympics, are not reasonably interchangeable with NCAA promotion rights or sponsorship agreements"); *Theatre Party Associates, Inc.*, 695 F. Supp. at 154-55 (rejecting a relevant product market that centered on a specific Broadway show, Phantom of the Opera, because "other forms of entertainment, namely other Broadway shows, the opera, ballet or even sporting events" would provide "adequate substitute products").

This market definition fails for yet another fundamental reason.  An antitrust plaintiff must not only allege a proper relevant market, but also that the defendant "possessed power in that market." *Spanish Broadcasting Systems of Fla. Inc. v. Clear Channel Comm'ns, Inc.*, 376 F.3d 1065, 1073 (11th Cir. 2004).  Indeed, in order to survive a motion to dismiss, a complaint must, at minimum, include allegations concerning a defendant's relative share of the applicable market. *See Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1229 (M.D. Fla. 2004).

Plaintiff makes no allegations regarding Wade's market power in the market for NBA personalized memorabilia.  All Plaintiff says is that Wade had the top selling jersey during the years 2005-2007 and that he was one of a small group of NBA stars who accounts for "significant sales of NBA personalized memorabilia outside the home market of his team." (Am.

Compl. ¶ 75.)   Neither allegation comes close to establishing the requisite market power necessary to state a claim for an antitrust violation.

With respect to Wade's alleged top-selling jersey **three years ago**, this allegation does nothing to establish Wade's market power for jersey sales today, and does not even address Wade's national market power for **personalized memorabilia**.  Similarly, Wade's alleged status as one of a select few NBA players whose popularity extends beyond his home city says nothing about Wade's market power in  "road cities," especially when compared to those cities' local stars.

The simple fact is that the deficiencies with Plaintiff's original relevant market definition that this Court identified cannot be corrected.  The requirements of reasonable interchangeability and market power, together with the prohibition against markets grounded in consumer preference, preclude Plaintiff from identifying a legally cognizable antitrust market in this case. Accordingly, Plaintiff's Amended Complaint should, again, be dismissed with prejudice.

## III.   THE ALLEGATIONS OF THE COMPLAINT DO NOT SATISFY THE *IQBAL/TWOMBLY* PLEADING REQUIREMENT

While Plaintiff's inability to bring the claims asserted in this case prevents it from even leaving the starting gate, there are numerous other, independent grounds on which the Amended Complaint should be dismissed with prejudice.

First, Plaintiff again fails to plead sufficient facts to clear the pleading hurdle set forth by the Supreme Court in *Ascroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As the Court recognized in the Order, when facing a Rule 12(b)(6) motion to dismiss "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Order at 4 (quoting *Twombly*, 550 U.S. at 555.)

In *Twombly*, the Supreme Court confirmed that in order to survive a motion to dismiss under Rule 12(b)(6) an antitrust complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

Citing *Iqbal*, this Court also reminded the parties that "Plaintiff must plead enough facts to state a plausible basis for the claim." Order at 4. Ultimately, the facts set forth in the complaint must be sufficient to "nudge the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### A.      D. Wade's Place LLC did not have a License to Sell Wade-Personalized Memorabilia

Like the original complaint, the lynchpin of Plaintiff's Amended Complaint is that Wade granted DWP a license to sell memorabilia that had been personalized by Wade. This time, however, Plaintiff goes even further. Expanding on the assertion of Plaintiff's counsel during oral argument, Plaintiff actually alleges that the license was **in perpetuity**.

This most basic of Plaintiff's allegations, however, is demonstrably false. DWP never was granted the license to sell Wade-personalized memorabilia—let alone a license that lasted in perpetuity. And, without that license, the entire foundation of Plaintiff's Amended Complaint crumbles.

In the Amended Complaint, Plaintiff purports to quote from the JVA, alleging that Wade "granted DWP the right to 'use his name, fame, nickname, initials autograph, voice, video or film portrayals, facsimile or original signature, photograph, likeness and image or facsimile image without Wade's consent' to create personalized memorabilia featuring Wade which could be sold at DWP Restaurants." (Am. Compl. ¶ 17.) Significantly, however, Plaintiff does not attach the JVA as an exhibit to its pleading. The omission is not mere happenstance.

**The JVA contains no such provision**.  In fact, nowhere is the notion of a license to sell Wade Memorabilia even alluded to.   Rather, the JVA merely grants DWP a license to use "[Wade's] name, image and likeness in **marketing the Restaurant Concept**," and then only with Wade's express approval.  *See* JVA at ¶ 2A.  A copy of the JVA is appended hereto as Ex. A.[1]

So, what of the supposed language granting DWP the license to sell Wade Memorabilia that Plaintiff quotes from in the JVA?  Plaintiff lifted the quoted language from a section of the JVA that actually **releases Wade for liability based on the actions of others**.

The quoted language is found at page 5 of the JVA in Section 13 under the Heading of **Release for Certain Acts.**  It provides as follows:

> 13.  <u>Release for Certain Acts</u>.  Notwithstanding anything to the contrary contained herein, **it is mutually understood that Wade has no control over, and is not responsible for**:
>
> *[. . .]*
>
>> C.  **The products and services endorsed, promoted, advertised or publicized by any association** for which Wade may belong or with respect to which he may become associated or by an of their respective successors and assigns, **all or any of which may use Wade's name, fame, nickname, initials, autograph, voice, video or film portrayals, facsimile or original signature, photograph, likeness and image or facsimile image, without Wade's consent** and in any or all of which Wade may appear or participate.

JVA at ¶ 13C (emphasis added).

---

[1] The Court may consider the JVA even though Plaintiff conspicuously failed to attach a copy of it to the Amended Complaint.  As the Eleventh Circuit stated "[w]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion will not require conversion of the motion into a motion for summary judgment."  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (reliance upon a document not attached to the complaint does not covert a motion to dismiss into a motion for summary judgment if the document is central to the plaintiff's claim and undisputed).

How Plaintiff and its counsel can rely on—and, indeed, quote from—this provision to allege that Wade granted DWP a license **in perpetuity** to sell Wade Memorabilia is a question Defendants will leave to Plaintiff's counsel to answer. Suffice it to say that the provision does not accord DWP a license to sell Wade Memorabilia. It does not even come close.

### B.   Wade's Obligations under the JVA were Subordinate to his other Commitments

Plaintiff's mischaracterization of the JVA does not stop there. Plaintiff claims that Defendants effectuated the conspiracy because the "enormous time-consuming obligations imposed by the JVA" led to lost opportunities for Defendants to market Wade in more profitable business opportunities. (*See* Am. Compl. ¶¶ 46, 59.) Specifically, Plaintiff alleges that the JVA required Wade to make four personal appearances at each D. Wade's Place restaurant annually, which, when multiplied by the 40 restaurants Plaintiff asserts were contemplated, meant that Wade would have been committed to make 160 appearances each year.

Again, the terms of the JVA clearly contradict the allegations of the Amended Complaint. First, the JVA does not, as Plaintiff alleges, require Wade to "make four personal appearances at each D. Wade's Place restaurant annually." (Am. Compl. ¶ 46.) Rather, it only requires that Wade "make an appearance at **any** DWP restaurant at least once per calendar quarter or at least four (4) times in a calendar year." JVA at ¶ 2D (emphasis added).

Second, and perhaps more striking, is that the same provision of the JVA clearly states that Wade's obligation to make personal appearances at DWP restaurants was "**[s]ubject to Wade's other business demands**." *Id.* (emphasis added). Moreover, the JVA expressly confirms that Wade's alleged obligation to promote the D. Wade's Place restaurants was subordinate to his other marketing and endorsement commitments—both currently in place and those that might arise in the future.

- 15 -

B.   DWP acknowledges that Wade has certain marketing and endorsement agreements with the National Basketball Association, Converse and other entities and may in the future enter into additional marketing or endorsement agreements with other companies.  Wade shall not be required from performing any of his obligations under this Agreement to the extent that they directly conflict with Wade's existing marketing and/or endorsement agreements with other companies.

JVA at ¶ 2B.

The bottom line is that when the JVA is viewed for what it actually says—and not what Plaintiff re-writes it to say—Plaintiff's theory of the case falls completely apart.

**C.**   **Plaintiff Does Not Allege  that Wade Terminated DWP's Alleged License To Sell Wade Memorabilia**

Almost as glaring as Plaintiff's mischaracterization of the JVA as granting DWP a license to sell Wade personalized Memorabilia is the complete absence of any allegation in the Amended Complaint that Wade or the other Defendants took any action to terminate the purported license.  Indeed, although Plaintiff alleges that Defendants conspired to "boycott" DWP, there is not a single allegation that even intimates that DWP was deprived of the right to compete in the sale of Wade Memorabilia just like every other seller.  To the contrary, considering that Plaintiff alleges that the JVA gave DWP the right to sell Wade Memorabilia over the internet (Am. Compl. ¶ 18), Plaintiff offers no explanation why DWP cannot currently compete in the sale of Wade Memorabilia.

Even with respect to Plaintiff's claim of the so-called boycott of DWP, moreover, the factual allegations of the Amended Complaint contradict that conclusion.  A boycott arises for antitrust purposes when a party is intentionally excluded from participation in commerce that is available to others.  *See Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 294 (1985).  Here, there is no allegation that DWP was excluded from

anything, or that DWP was treated in any manner differently than any other alleged seller of Wade Memorabilia.  Indeed, Plaintiff's theory of the case is exactly the opposite.

Plaintiff complains not because Defendants conspired to prevent DWP from competing in the sale of Wade memorabilia, or because Defendants imposed restrictions or barriers which placed DWP at a competitive disadvantage in the sale of Wade Memorabilia.  Rather, the foundation of Plaintiff's case is that by Wade's alleged breach of his alleged obligations to promote the D. Wade's Place restaurants, the unnamed licensee and the future franchisees were deprived of what Plaintiff claims would have given them a competitive **advantage** over the other sellers of Wade Memorabilia.  (Am. Compl. ¶ 40.)

Whether these allegations might give rise to a claim for breach of contract is for another court to decide.  What they cannot support, however, is a claim for violation of the antitrust laws.

### D.    Plaintiff Cannot Allege an Antitrust Injury

As discussed above, in addition to basic standing, "antitrust injury" is a necessary prerequisite of any antitrust claim.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977).  To establish antitrust injury, "plaintiffs must show more than that the defendants' conduct caused them an injury.  Plaintiffs must allege and prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) (internal quotations and citations omitted); *see also Todorov,* 921 F.2d at 1449.  This antitrust injury requirement underscores the fundamental tenet that "the antitrust laws were enacted for the protection of *competition,* not *competitors*."  *Id.* at 1450 (quoting *Brunswick,* 429 U.S. at 487-88); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (antitrust laws created to protect competition, not competitors); *Levine v. Central Florida Medical Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996) (same).  And, as the Eleventh Circuit explained, "[t]he reason

for the standing limitation in antitrust cases . . . is to avoid overdeterrence resulting from the use of the somewhat draconian treble-damage award." *Todorov,* 921 F.2d at 1449.

Plaintiff alleges that Defendants violated the antitrust laws because consumers were deprived of a source of Wade-personalized memorabilia at potentially lower prices. (*See, e.g.,* Am. Compl. ¶¶ 63, 71, 77.)  However, neither Plaintiff nor DWP has standing to assert **that** injury.

Plaintiff has not alleged any basis to establish a causal link—let alone a direct causal link—between DWP's asserted injury and the prices charged for Wade-personalized memorabilia.  For example, although Plaintiff alleges the possibility that the unnamed licensees and future franchisees might offer Wade-personalized memorabilia to restaurant customers at "potentially lower" prices, there are no allegations that the licensee ever did or that there was any limitation on what the ultimate sellers could charge.

Of equal importance, by Plaintiff's own allegations DWP never sold a single item of Wade Memorabilia to the public, and never was even contemplated to sell Wade Memorabilia to the public.  Instead, only the unnamed licensee that owned the two D. Wade's Place restaurants and the potential future franchisees were alleged to be involved with retail sales.  According to the Amended Complaint, DWP's business plan called for it to sell the memorabilia on a wholesale basis to the licensee and franchisees who could then charge whatever they wanted to without any restriction from DWP.

In addition, because there is no allegation that Wade ever terminated DWP's alleged license to sell Wade Memorabilia, it cannot even allege that it lost the right to compete in that market.  Indeed, Plaintiff's complaint is not that DWP was deprived of the right to compete with the existing sellers of Wade Memorabilia.  Rather, its claim is that the licensee and future

franchisees of D. Wade's Place restaurants lost the supposed competitive **advantage** in the sale of Wade Memorabilia that they allegedly would have gained by selling their merchandise in a more favorable setting.

In short, other than pure speculation about how the unnamed licensee and future franchisees' pricing might have benefited hypothetical future restaurant customers, Plaintiff has offered nothing to accord even DWP standing to assert antitrust claims against Defendants. For this reason as well, Plaintiff's Amended Complaint should be dismissed with prejudice.

## IV.   PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS PARTICIPATED IN AN UNLAWFUL HORIZONTAL CONSPIRACY

In order to state a Section 1 claim, a private plaintiff must allege: "(1) an agreement to enter a conspiracy; (2) designed to achieve an unlawful objective"; and (3) "actual unlawful effects [or] facts which radiate a potential for future harm to competition." *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 1001 (11th Cir. 1993) (internal citations and quotations omitted). The core foundation of any antitrust claims is that the defendants engaged in an illegal restraint of trade. *See, e.g.*, *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 60-62 (1911). The Amended Complaint fails each of these tests.

### A.   Wade Has an Unquestionable Right to Control the Use of His Name, Likeness, and Fame for Commercial Purposes

In this case, the restraint of trade that Plaintiff alleges was the object of Defendants' purported conspiracy was the elimination of DWP as a competitor in the sale of Wade Memorabilia. As discussed above, however, (i) DWP was never granted a license to sell Wade Memorabilia and thus was never a competitor in the first place, and (ii) even assuming Plaintiff's mischaracterization of the terms of the JVA were true, Plaintiff nowhere alleges that Wade—by himself, or in conspiracy with the other Defendants—ever terminated the DWP's purported

license to sell Wade Memorabilia.  For these reasons alone, Plaintiff's conspiracy claims must fail.

Plaintiff's claims, however, also should be dismissed because Wade has an unquestionable right to control the use of his name, likeness, and fame for commercial purposes. And, by exercising that right, Wade and the other Defendants cannot run afoul of the antitrust laws.

As Plaintiff itself acknowledged in its opposition to Defendants' Motion to Dismiss the original complaint, "Wade [has] an undisputed monopoly in his name and legal image; and he is free to retain it entirely for himself, while blocking anyone else from using it." (Opp. at 10.)

In its prior briefing, Plaintiff argued that Wade gave up his right to control his name, likeness and fame by *voluntarily* entering into the JVA and licensing the right to sell Wade Memorabilia to DWP.  As Defendants pointed out during oral argument, however, the Seventh Circuit rejected this exact contention in its decision in *American Needle Inc. v. National Football League*, 538 F.3d 736 (7th Cir. 2008).  The Seventh Circuit explained that  the NFL teams, as collective owner of all team licensing rights, were free to choose who to grant licensing contracts to, and could do so on an exclusive basis even if the effect was to reduce or eliminate competition altogether.  *Id.* at 743-44.

Plaintiff's response?  First, it "modifies" its previous allegations of the supposed license to sell Wade Memorabilia, this time asserting that the license was in perpetuity.  Then, it drops the monopoly and conspiracy to monopolize claims under Section 2 of the Sherman Act that it asserted in its original complaint in favor of expanded conspiracy claims under Section 1. Neither change helps.

With respect to its new in perpetuity contention, Plaintiff still cannot overcome the fact that Wade's right to grant or withhold a license to his name, likeness and fame free of any antitrust implications means that Wade also can terminate a license free of any antitrust implications.  Indeed, if Plaintiff were correct, then every frustrated licensee could transform its breach of license claim into a treble damages antitrust action.  Not surprisingly, Plaintiff cannot point to any decision that recognizes such an illogical conclusion.

Plaintiff's alternative strategy—to drop its monopolization claims in favor of expanded conspiracy claims—also does not work.  Plaintiff apparently hopes to capitalize on the distinction recognized by the Supreme Court in *Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 760-61 (1984) that non-actionable behavior by a holder of a legal monopoly can become actionable if it is the result of an illegal conspiracy to restrain trade under Section 1 of the Sherman Act.  However, that distinction only applies if the object of the conspiracy is to set prices or to impose non-price restrictions on the alleged victim(s) of the conspiracy.  *Id.*

Here there is neither.  Nowhere in the Amended Complaint is there any allegation that the purpose of the supposed conspiracy was to set prices for Wade Memorabilia.  In fact, as discussed below, there is not a single allegation that any of Wade's alleged coconspirators had anything whatsoever to do with Wade Memorabilia.  To the contrary, the sole object of the alleged conspiracy was to free Wade up from his alleged obligations to promote the D. Wade's Place restaurants—an obligation that was expressly negated by the terms of the JVA.

Similarly, there are no allegations that the object of the conspiracy was to impose non-price restrictions on DWP's right to sell Wade Memorabilia.  Once more, according to the Amended Complaint, Wade never terminated DWP's alleged license to sell Wade Memorabilia,

and neither Wade nor any of the other Defendants took any action to place DWP at a competitive disadvantage compared to other sellers of Wade Memorabilia.

In short, Plaintiff's claims in its Amended Complaint fail as a matter of law because—giving Plaintiff every inference imaginable—it still cannot overcome the fundamental tenet that Wade owns his name, likeness and fame, and is free to exploit it in whatever way he deems appropriate.

**B.      Plaintiff's Failure to Plead that the Defendants and Plaintiff are Competitors in the Same Market Precludes Application of the *Per Se* Rule**

Aside from anything else, Count I of the Amended Complaint must be dismissed because a *per se* conspiracy under Section 1, such as alleged by Plaintiff, requires that the alleged conspirators must be competitors in the same market.  In *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) the Supreme Court stated that "precedent limits the *per se* rule in the boycott context to cases involving horizontal agreements among direct competitors."

Here, none of Defendants are alleged to be competitors of each other.  In fact, nowhere in the Amended Complaint does Plaintiff suggest that any of the non-Wade Defendants had any interest whatsoever in the sale of Wade Memorabilia.  Whereas Plaintiff alleged in its original complaint that Andrews and Wade Global were at least somewhat involved in the sale of Wade Memorabilia, it abandoned these allegations completely in its Amended Complaint.

And, as far as CSMG and Thomas are concerned, the entire premise of their alleged involvement in the supposed conspiracy was specifically because they had absolutely nothing to do with the D. Wade's place restaurants, or the sale of Wade Memorabilia.

For this reason as well, Plaintiff's Amended Complaint should be dismissed.

**C.      Defendants Cannot as a Matter of Law Conspire for Purposes of Section 1 Because, other than Wade, None of Them had any Involvement Whatsoever in the Sale of Wade Memorabilia**

Plaintiff appears to have forgotten that this is not a breach of contract suit, but a federal antitrust action.  Plaintiff also appears to have forgotten that the gravamen of its antitrust claim is that "the core violations" of the Amended Complaint "relate to the Defendants' efforts to boycott and destroy present competition and a future competitive channel for the distribution and sale of personalized Wade memorabilia."  (Am. Compl. ¶ 2.)  How else can Plaintiff explain why it has asserted federal antitrust claims against parties who are not alleged to have any interest— economic or otherwise—in the sale of Wade Memorabilia?  And, how else can it explain that the asserted object of the alleged conspiracy had absolutely nothing to do with the sale of Wade Memorabilia?

Instead, the sole alleged purpose for CSMG's, Thomas's, Wade Global's, and Andrew's alleged participation in the conspiracy was that they "all resented the amounts of time and promotional efforts that Defendant Wade was obliged to devote to DWP under the JVA, because these obligations diverted Wade's available time away from more profitable business opportunities that they were developing using Wade's name, image and likeness."  (Am. Compl. ¶ 59.)

Frankly, it is difficult to conceive how these allegations can connect the non-Wade Defendants even to Plaintiff's breach of contract claim against Wade.  They certainly cannot form the basis for a Section 1 action under the Sherman Act.

**D.**     **Defendants Cannot, as a Matter of Law, Conspire for Purposes of Section 1
Because they Have a Single Economic Interest**

Section 1 of the Sherman Act does not apply to unilateral activity, even if such activity
tends to restrain trade.  *See Ben Sheftall Distrib. Co., Inc. v. Mirta de Perales, Inc.*, 791 F. Supp.
1575, 1580 (S.D. Ga. 1992).  Rather, "[p]roof of concerted action requires evidence that two or
more **distinct** entities agreed to take action against a plaintiff."  *Sigel Transfer, Inc. v. Carrier
Express, Inc.*, 54 F.3d 1125, 1131 (3d Cir. 1995) (emphasis added).  A claim brought under
Section 1 of the Sherman Act that alleges only unilateral activity cannot succeed as a matter of
law.  *Fraser v. Major League Soccer, L.L.C.*, 97 F. Supp. 2d 130, 139 (D. Mass. 2000).

The requirement of an agreement between distinct entities in restraint of trade excludes
from the ambit of a Section 1 claim agreements between parties that act as a single economic
unit.  For example, the Supreme Court has held that a parent and subsidiary acting together is
unilateral activity and not concerted action for purposes of a claim brought under Section 1 of the
Sherman Act.  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984).  The
Court also held that employees of a corporation cannot conspire with the corporation.  *Id.* at 769.

Similarly, a principal cannot conspire with its agents.  *See, e.g., Day v. Taylor*, 400 F.3d
1272, 1276 (11th Cir. 2005) (in case of agency, there can be no conspiracy in restraint of trade);
*Sigel Transfer, Inc.*, 54 F.3d at 1135 (motor carrier could not conspire with its agent); *Nurse
Midwifery Assocs. v. Hibbett*, 918 F.2d 605, 615 (6th Cir. 1990) (recognizing in antitrust context,
"traditional rule that a principal cannot conspire with one of its agents").  "The theme in these
cases is economic unity.  Where there is substantial common ownership, a fiduciary obligation to
act for another entity's economic benefit or an agreement to divide profits and losses, individual
firms function as an economic unit and are generally treated as a single entity."  *Freeman v. San
Diego Ass'n of Realtors*, 322 F.3d 1133, 1148 (9th Cir. 2003).

In determining whether certain entities are distinct, the court must look to "the substance, and not the form, of economic arrangements." *Sigel Transfer, Inc.*, 54 F.3d at 1132 (citing *Copperweld*, 467 U.S. at 772-73). Thus, even legally distinct entities cannot conspire among themselves if they "pursue[ ] the common interests of the whole rather than interests separate from those of the [group] itself." *Copperweld*, 467 U.S. at 770.

In this case, Plaintiff's allegations, which must at this state of this action be accepted as true, demonstrate that Defendants did not function as separate economic actors, but instead operated at all times as a single economic unit. Specifically, Plaintiff alleges that:

- Wade owns 51% of Wade Global. (Am. Compl. ¶ 15.)

- Andrews is a 49% owner of Wade Global and its manager. (*Id.* ¶¶ 13, 15.)

- Wade Global, which according to the Amended Complaint was created for the purpose of "provid[ing] for 'life after Basketball for Mr. Wade'", generates "licensing and business activities based on Wade's name, likeness, and image." (*Id.* ¶¶ 15, 29.)

- Thomas is Wade's "partner-agent" and "**the apparent leader of Defendant Wade's marketing team**." He was also the President of CSMG. (*Id.* ¶¶ 14, 53 (emphasis added).)

Plaintiff's formbook allegations to the contrary—such as that "Andrews and Thomas were rivals in developing promotional and business opportunities" for Wade (Am. Compl. ¶ 56)—do not change the fact that the non-Wade Defendants all act with a single economic interest.

Therefore, Plaintiff's claims should also be dismissed because members of a single economic unit cannot, as a matter of law, conspire with one another for the purposes of a Section 1 conspiracy.

## **<u>CONCLUSION</u>**

Plaintiff has now had more than an ample opportunity to plead, replead and refine its claims.  Given the benefit of a full round of briefing on Defendants' prior Motion to Dismiss, an oral argument before the Court, and the Court's Order, Plaintiff still cannot plead a cognizable claim under the antitrust laws.   Plaintiff's Amended Complaint should be dismissed with prejudice.

Dated:  May 6, 2010    Respectfully submitted,

By:  *s/Robert W. Turken*

  **ROBERT W. TURKEN** (Florida Bar No. 306355)
  rturken@bilzin.com
  **MICHAEL N. KREITZER** (Florida Bar No. 705561)
  mkreitzer@bilzin.com
  **SCOTT N. WAGNER** (Florida Bar No. 51662)
  swagner@bilzin.com
  **BILZIN SUMBERG BAENA PRICE**
   **& AXELROD LLP**
  200 South Biscayne Boulevard, Suite 2500
  Miami, Florida 33131-5340
  Telephone:  (305) 374-7580
  Facsimile:  (305) 374-7593

  *Counsel for Defendants Dwyane Wade, Marcus*
  *Andrews and Wade Global LLC*

By:  *s/E. Colin Thompson*

  **FREDRICK H.L. McCLURE**
  (Florida Bar No. 147354)
  fredrick.mcclure@dlapiper.com
  **E. COLIN THOMPSON** (Florida Bar No. 684929)
  colin.thompson@dlapiper.com
  **BENJAMIN S. BOYD** (Florida Bar No. 50401)
  benjamin.boyd@dlapiper.com
  **DLA PIPER LLP (US)**
  100 North Tampa Street, Suite 2200
  Tampa, Florida 33602
  Telephone:  (813) 229-2111
  Facsimile:  (813)229-1447

  OF COUNSEL:

  **KENNETH G. STARLING**
  (District of Columbia Bar No. 197806)
  kenneth.starling@dlapiper.com
  **DLA PIPER LLP (US)**
  500 8th Street, N.W.
  Washington, D.C. 20004
  Telephone:  (202) 799-4518
  Facsimile:  (202) 799-5518

  *Counsel for Defendants Henry Thomas and CSMG*
  *Sports Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this ___6th___ day of May, 2010, I electronically filed the

foregoing document with the Clerk of Court using CM/ECF, which will send Notices of

Electronic Filing to all counsel of record identified on the attached Service List.

_s/Robert W. Turken_____
Robert W. Turken, Esq.

<u>**SERVICE LIST**</u>

Richard M. Bales, Esq.
BALES SOMMERS & KLEIN, P.A.
One Biscayne Tower
2 South Biscayne Blvd.
Suite 1881
Miami, FL 33131
Telephone: (305) 372-1200
Facsimile: (305) 372-9008


Bruce Fein, Esq.
bruce@thelichfieldgroup.com
BRUCE FEIN & ASSOCIATES, INC.
Co-Counsel for L.H. Equity Investments LLC
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC  20036
Telephone:  (703) 963-4968
Facsimile:  (202) 478-1664

Donald I. Baker, Esq.
dbaker@bakerandmiller.com
Baker & Miller PLLC
Co-Counsel for L.H. Equity Investments LLC
2401 Pennsylvania Avenue, NW
Suite 300
Washington, DC  20037
Telephone:  (202) 663-7820
Facsimile:  (202) 663-7849